The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDRE JUSTICE ATWATER,<br><br>Defendant. | NO. CR25-122 JLR<br><br>UNITED STATES SENTENCING MEMORANDUM |

I.    **Introduction.**

Police officers searched Andre Atwater's apartment after he shot two men with a high-powered BB rifle. Both men had gunshot wounds and identified the apartment from which the assailant fired the shots. Officers found Atwater hiding in a closet and arrested him. They also found an open gun safe containing an arsenal of weaponry – approximately 25 firearms, most of which were privately manufactured firearms (a/k/a "ghost guns"); numerous firearm magazines, including 24 AK47 magazines and ten Glock magazines; and numerous boxes of ammunition.

The weapons were found in a room that Atwater had converted into a workshop for manufacturing firearms; it contained various equipment, including a 3D printer and a large drill press machine, and numerous firearms parts. Hanging on the wall of the

United States' Sentencing Memorandum - 1
*United States v. Atwater,* CR25-122 JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

workshop was the Washington State business license for Atwater's company, the Gaston & Stoner Corporation, d/b/a Gun Craft HQ.

Although, at that time, Atwater legally possessed these firearms, he also possessed some dangerous illegal contraband. Specifically, he had two illegal firearm silencers and an astonishing 103 machinegun conversion devices (a/k/a "Glock switches"), which are illegal to possess because they are "machineguns" under federal law. Considering that Atwater appeared to be selling, or preparing to sell, firearms through his Gun Craft HQ business, his possession of this large stash of machinegun conversion devices is extremely concerning.

The Court should impose a sentence of 36 months to achieve the statutory goals of sentencing.

## II.   The Sentencing Guidelines Calculations.

The government concurs with the Sentencing Guidelines calculations in the Presentence Report. Specifically, the total offense level is 15; Atwater falls within Criminal History Category II; and there is a resulting advisory Guidelines range of 21-27 months.

This Guidelines range is significantly lower than what the parties had originally contemplated in the Plea Agreement. The parties agreed that an 8-level upward adjustment was applicable under USSG § 2K2.1(b)(1)(D) because the offense involved more than 100 "firearms." Plea Agreement ¶ 9(b). This was based on the parties' understanding that the 103 machinegun conversion devices qualified as "firearms" under Section 2K2.1. *See* USSG 2K2.1, Application Note 1 (defining "firearm" as having the same meaning as 18 U.S.C. § 921(a)(3)).

However, after the entry of Atwater's guilty plea, the Supreme Court limited what qualifies as a "firearm" under § 921(a)(3). In *Bondi v. VanDerStock*, 604 U.S. 458 (2025), the Court held that to qualify as a firearm under § 921(a)(3), an item must be a "weapon" that is "able to expel a projectile by the action of an explosive, designed to do so, or susceptible of ready conversion to operate that way." *Id.* at 468. A machinegun conversion device, when disconnected from a firearm (as Atwater's were), cannot meet

United States' Sentencing Memorandum - 2
*United States v. Atwater,* CR25-122 JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

these requirements on its own. Therefore, after the *VanDerStock* decision, the parties entered into a Stipulated Amendment to the Plea Agreement, excising the 8-level upward adjustment under USSG § 2K2.1(b)(1)(D). Dkt. 25 at 1.[1]

Atwater's windfall in this regard is especially notable because, after the *VanDerStock* decision, the Sentencing Commission amended Section 2K2.1 to remove this "loophole" for machinegun conversion devices. Under the 2025 edition of the Guidelines – which do not apply to Atwater's case – there is a new 4-level upward adjustment where a defendant possesses 30 or more machinegun conversion devices. *See* USSG 2K2.1(b)(5)(B) (2025 edition). Had Atwater been eligible for this 4-level adjustment, he would be facing a higher sentencing range of 33-41 months.

### III. Sentencing Recommendation.

The government recommends that the Court sentence Atwater to a total term of imprisonment of **36 months** and a term of supervised release of three years, with all the conditions of supervised release recommended by the Probation Office. The various statutory sentencing factors support a custodial sentence of 36 months in this case, including, most prominently, the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; the history and characteristics of the defendant; and the need for the sentence to afford adequate deterrence to criminal conduct.

### A. The Nature/Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense and to Provide Just Punishment.

Atwater's offense conduct was extremely serious. There are several aggravating aspects of Atwater's offense that warrant a substantial sentence.

First, Atwater's offense of conviction was preceded by his shooting of two men with a high-powered BB rifle through the window of his apartment. For this, he was

---

[1] *VanDerStock* dealt only with the definition of "firearm" under § 921(a)(3) and did not have any effect on the broader definition of the same term under Title 26, United States Code, Section 5845(a), which includes a "machinegun." The definition of "machinegun," in turn, includes "any part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun," such as a machinegun conversion device. 26 U.S.C. § 5845(b).

United States' Sentencing Memorandum - 3
*United States v. Atwater,* CR25-122 JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

convicted of *Assault in the Second Degree – Deadly Weapon* and sentenced to nine months in prison (concurrent with the federal sentence). PSR ¶ 30.

Atwater's violent and reckless conduct in this regard is especially concerning considering the second aggravated aspect of his offense conduct – his possession of an arsenal of weaponry. Atwater converted one of his apartment's two bedrooms into a workshop for firearm manufacturing, with a 3D printer, a large drill press machine, milling and other tools, and numerous firearms and firearm parts. Among other things, officers recovered from this room: a 9mm handgun with a green laser sight (hidden in a laundry hamper); approximately 20 unserialized "ghost guns," including 16 handguns and four assault rifles; a few serialized rifles; 24 AK47 magazines, 10 Glock magazines, and assorted other magazines; numerous boxes of ammunition; and various other firearm parts, including numerous lower receivers for pistols and rifles, firearm frames, and grips.



Weapons recovered from apartment



Gun safe in apartment with unserialized firearms

United States' Sentencing Memorandum - 4
*United States v. Atwater,* CR25-122 JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



3D printer and accessories for making gun parts. | Manufacturing equipment for firearms

Third, Atwater illegally possessed dangerous contraband items – two firearm silencers and a whopping 103 machinegun conversion devices.

 



Bags of Glock switch devices | Two Glock switch devices

United States' Sentencing Memorandum - 5
United States v. Atwater, CR25-122 JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970







United States' Sentencing Memorandum - 6
United States v. Atwater, CR25-122 JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

An ATF Firearms Enforcement Officer conducted forensic testing and determined that all 103 machinegun conversion devices qualified as "machineguns" under federal law because they are parts "designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). The officer further noted that, as is common with imitation Glock switches made in China, the devices Atwater possessed needed a slight modification to function as intended, *i.e.*, to convert a semiautomatic pistol into an automatic-fire machinegun. Specifically, the devices needed to be "hand fitted," a process that involves filing down the small leg of the device, so it fits properly into the slide of a particular firearm. According to the officer, this process involves the use of a simple hand tool, such as a needle file, and would take a lay person with basic skills about 30 minutes to accomplish. Indeed, Atwater started the filing process on three of the seized machinegun conversion devices but seems not to have fully completed the process.

Fourth, the evidence strongly suggests that Atwater was selling – or intending to sell – the firearms and related items he possessed. Indeed, he was the registered agent of the Gaston & Stoner Corporation, d/b/a Gun Craft HQ, and had the business registration posted on the wall of his firearms manufacturing workshop. Moreover, the sheer volume of firearms Atwater possessed (and likely manufactured himself), and the large quantity of 103 machinegun conversion devices, is consistent with his present and/or future intent to sell the firearms and Glock switches. But for the fortuitous law enforcement intervention, Atwater had the potential to supply the streets of Seattle with dangerous firearms and machinegun devices – all or most of which would have inevitably ended up in the hands of dangerous individuals. *See* PSR Sentencing Recommendation at 5 ("[T]he potential risk of danger based on the nature of the instant offense is aggravating. When firearms are present illegally, this has been known to lead to violence and/or death.").

//
//
//
//

United States' Sentencing Memorandum - 7
United States v. Atwater, CR25-122 JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B. The Defendant's History and Characteristics.**

Atwater's history and characteristics are generally mitigating. He has an ACEs score of nine reflecting a variety of difficult circumstances he encountered during this upbringing. Moreover, prior to the assault that led to the instant federal charges, Atwater had no felony convictions.

**C. The Need to Afford Adequate Deterrence to Criminal Conduct.**

It is important for the Court's sentence to both *specifically* deter Atwater's future conduct and afford adequate *general* deterrence against others who may seek to engage in similar criminal conduct in the future. As this Court well knows, firearms trafficking is a significant and growing problem in our local community. And the proliferation of Glock switches has led to shots-fired incidents with increasing numbers of rounds being fired throughout Seattle and King County. *See* PSR Sentencing Recommendation at 4 ("Even though there is no official victim in this case, [Atwater] is responsible for promoting gun violence.").

In determining the appropriate sentence, the Court also should be mindful of the windfall Atwater received due to the loophole in USSG 2K2.1 for possession of machinegun conversion devices. Under the original Plea Agreement, Atwater would have faced an advisory sentencing range of 51-63 months, and the government had agreed to recommend a sentence of not more than 48 months. Plea Agreement ¶ 11. Under the 2025 Guidelines, Atwater would have faced a range of 33-41 months. Instead, his sentencing range is much lower (21-27 months), and the government has agreed to make a lower sentencing recommendation of 36 months. *See* Stipulated Amendment to Plea Agreement at 1 (modifying paragraph 11 of the Plea Agreement).

Taking all of these factors into account, the most appropriate sentence is 36 months.[2]

---

[2] Although the government's recommendation of 36 months is above the applicable Guidelines range, Atwater waived his right to appeal the sentence if it is not greater than 36 months. *See* Stipulated Amendment to Plea Agreement at 2 (modifying paragraph 16 of the Plea Agreement).

United States' Sentencing Memorandum - 8
*United States v. Atwater,* CR25-122 JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. Conclusion.

For all the reasons set forth above, the government recommends that the Court sentence the defendant to a term of imprisonment of 36 months and a term of supervised release of three years, with all of the conditions of supervised release recommended by the Probation Office.

DATED this 7th day of January, 2026.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

*s/ Todd Greenberg*
TODD GREENBERG
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-2636
Fax: 206-553-4440
Email: Todd.Greenberg4@usdoj.gov

United States' Sentencing Memorandum - 9
*United States v. Atwater,* CR25-122 JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970